**AFFIRMED; Opinion Filed June 20, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00787-CR

**ROY LEE TANNER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1476344-Q**

## MEMORANDUM OPINION

Before Justices Bridges, Evans, and O'Neill[1]
Opinion by Justice Evans

Roy Lee Tanner appeals his conviction for aggravated sexual assault of a child. In two issues, appellant contends the trial court erred in allowing impermissible hearsay evidence to be presented to the jury and the evidence is insufficient to support his conviction. We affirm the trial court's judgment.

### BACKGROUND

Appellant is the father of two girls, A.T. and E.T. On June 28, 2014, Child Protective Services ("CPS") was contacted because A.T. and E.T. were found sleeping in a car in a motel parking lot. A.T. was five years old and E.T. was three years old. CPS removed the girls from

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned

appellant's custody and placed them in foster care. The girls' mother was living in another state at the time.

The girls were eventually placed with Shaun and Rocky Baker who have a licensed group foster home. Shaun stated that both girls were happy and affectionate and quickly began calling her "mom." Within a week after arriving at the Bakers, the girls had a scheduled visit with appellant. When Shaun told E.T. that she would be visiting her father, Shaun noticed that E.T. became withdrawn and appeared nervous and scared. When E.T. returned from the visit, she was very quiet and wanted her sister who had gone back to school.

That afternoon, when A.T. returned from school, she and E.T. sat on the couch to watch cartoons. When Shaun entered the room, she heard E.T. say to A.T. "I told Mom what Dad does to us." Shaun stated she believed E.T. waited for her to come into the room to make the statement. According to Shaun, A.T. appeared scared and shocked. A.T. first responded, "I don't know what you are talking about." But the girls continued to talk, becoming more and more upset, until A.T. stated, "But he'll kill me." At that point, Shaun stated, both girls were "fully balling their eyes out." Shaun reported the abuse to Child Protective Services and took the girls to Children's Hospital in Dallas for a sexual assault medical examination.

The sexual assault medical examinations were performed by Sandra Onyinanya, a nurse examiner. As part of the exam, Onyinanya spoke with Shaun about the girls' history. After conducting a medical examination of A.T., Onyinanya stated there was no evidence of trauma to her anus or genitals. Onyinanya stated this was common, however, because the tissue in those areas heals quickly. Onyinanya also found no evidence of trauma to E.T.

Approximately two weeks later, Shaun took the girls to see a child and family therapist, Terri Liticker. During the initial meeting, Shaun stayed in the room with A.T. According to

Liticker, when she began to ask A.T. about the alleged sexual abuse, A.T. crawled into Shaun's lap, turned her head, and started crying. Liticker stated this behavior indicated that A.T. had suffered that type of trauma. When Shaun told Liticker what A.T. had told her, A.T. cried and stated that she had told Shaun about it, but she didn't want to talk. She told Shaun, "You tell her."

Shaun related that A.T. told her appellant had touched her private parts and A.T. used the word "pee pee." Shaun said A.T. had described acts that sounded like full intercourse and said appellant "put his conditioner in her." Liticker stated the terms "pee pee" and "conditioner" were A.T.'s words and not Shaun's. Liticker stated that A.T. was emotional the whole time Shaun was speaking and cried most of the time. Liticker also said that, although A.T. was afraid of her at first, she quickly sought comfort by crawling into her lap which indicated A.T. had inappropriate boundaries. Liticker indicated that, in later conversations when she spoke with A.T. alone, A.T. expressed concern about appellant being put in jail and asked whether dads go to jail "if little kids tell." A.T. expressed feelings that she cared about appellant but was also scared of him. Liticker stated it was not unusual for children to recant accusations when they realize the consequences of their statements.

Sometime after Shaun reported the alleged abuse, Detective Dior-Ali Cupid of the Dallas Police Department child abuse unit was assigned to the case. Cupid immediately scheduled a forensic interview of A.T. The interview was conducted by Nakisha Biglow at the Dallas Children's Advocacy Center with Detective Cupid present.

During the interview, A.T. told Biglow that appellant would pour "conditioner" on her hair and on her "vagina" and that the "conditioner" would come from his "vagina." A.T. also told Biglow that appellant took her clothes off, put his finger in her butt, and wiggled it. A.T.

said it hurt when appellant did this and when she told him to stop, he refused. A.T. stated that appellant also left her alone with a friend of his who took naked pictures of her. A.T. said that, when she visited appellant, he would tell her that he didn't love her and didn't want to see her anymore. Biglow also spoke to E.T., but Biglow stated E.T. did not disclose any abuse and told her that she did not know about anything happening to her sister.

Detective Cupid later interviewed appellant. Appellant told Detective Cupid, among other things, that when A.T. was one or two years old he put his finger inside her anus to help her with a hard stool. Appellant also told the detective that he once left A.T. with a friend at his residence. When he later developed some pictures off a camera he found, he said there were pictures of A.T. and his friend naked.

In late 2014, A.T. and E.T. were removed from the Bakers' care and placed with appellant's brother and his wife, Roketa and Lavon Tanner. In February 2015, the Tanners took A.T. to see a new therapist, Lola McGee. Although Liticker informed the Tanners that she wanted to help A.T. transition to the new therapist by communicating with her and transferring A.T.'s records over, the Tanners never sent Liticker the consent forms necessary for that to occur.

McGee stated the referral she received said that A.T. had been sexually abused by her father. But when she asked A.T. about inappropriate touching, A.T. denied that her father touched her in a sexually inappropriate manner. Approximately four months later, during an interview at which members of the district attorney's office were present, A.T. denied that anyone had ever touched her private parts, hurt her private parts, or touched her anywhere they were not supposed to touch her.

Appellant was indicted for aggravated sexual assault of a child. Specifically, the State alleged that appellant "did unlawfully then and there intentionally and knowingly cause the penetration of the anus of [A.T.], a child, who was not then the spouse of defendant, by an object, to-wit: the finger of defendant, and at the time of the offense, the child was younger than six years of age." Appellant pleaded not guilty. Following a jury trial, appellant was convicted and sentenced to forty years' confinement. This appeal followed.

## ANALYSIS

### A. Hearsay Evidence

In his first issue, appellant contends the trial court erred in permitting impermissible hearsay evidence to go before the jury. The evidence about which appellant complains is the clinical record and testimony of Onyinanya, the nurse examiner. In both the clinical record and her testimony, Onyinanya related Shaun's statements to her about A.T.'s history before A.T.'s medical examination. Onyinanya testified Shaun told her about various acts of sexual abuse that A.T. alleged appellant had committed. She further testified that she gathered this information from Shaun because A.T.'s history is what would guide her diagnosis and treatment. Appellant objected to admission of the evidence stating,

> Defense will object to [the clinical record] as hearsay within hearsay with regards to statements from the foster mother to medical personnel as to hearsay within that document. She's not the outcry witness. She's already been on the stand to testify. I've had the opportunity to cross-examine her, but I cannot cross-examine her on those statements. That makes it hearsay, and we object to its admission.

After the trial court overruled the objection, appellant asked for a running objection as to Onyinanya's testimony about "statements from the foster mom."

Onyinanya testified that A.T. told Shaun appellant touched her and her sister "down there" daily. Appellant also "put his hands on his pee pee and moved them in and out" until conditioner came out and he would make the girls drink it. According to Onyinanya, A.T. told

Shaun that whenever appellant was on top of her "it felt like he was ripping her apart" and "sometimes he put conditioner inside of her, and it leak[ed] out of her when he took his pee pee out." A.T. also told Shaun appellant would do the same things to E.T. and she could hear E.T. screaming in pain. Finally, A.T. told Shaun appellant threatened to kill her if she told.

Appellant's argument on appeal is largely a recitation of case law regarding the confrontation clause preceded by the statement that "appellant was not afforded the opportunity to question the complainant." But appellant's objection at trial was not that he was unable to question A.T. Rather, appellant objected that he was supposedly unable to cross-examine Shaun, a witness at trial, about her statements to Onyinanya.[2] When an issue raised on appeal does not comport with the objection made at trial, nothing is preserved for review. *See* TEX. R. APP. P. 33.1.

As for appellant's complaint that the evidence at issue was inadmissible hearsay, appellant merely cites without any analysis Texas Rule of Evidence 803(4). Rule 803(4) provides an exception to the hearsay rule for statements made for purposes of medical diagnosis or treatment. *See* TEX. R. EVID. 803(4). Appellant does not make any argument or cite any authority to show why the exception he cites would not apply in this case. Under the rule, statements by a child's parent or guardian to a medical practitioner relating allegations of sexual abuse may not be excluded by the rule against hearsay. *See Sandoval v. State*, 52 S.W.3d 851, 856–57 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

Furthermore, the majority of the information related by Onyinanya in her clinical report and testimony was repetitive of the testimony provided by several other witness including Shaun,

---

[2] *See Segura v. State*, 05-15-00032-CR, 2015 WL 8273712, at *3 (Tex. App.—Dallas Dec. 8, 2015, no. pet.) (no violation of Confrontation Clause where person who made statements recorded in medical record of sexual assault nurse examiner testified during trial) (mem. op., not designated for publication).

Biglow, and Liticker. These witnesses testified without objection that A.T. told them appellant abused both her and her sister, made "conditioner" come out of his genitals, put the "conditioner" inside her vagina, committed acts with her that hurt and "sounded like full intercourse," and threatened to kill her if she told anyone. Accordingly, even if the admission of Onyinanya's report and testimony was erroneous, it would not constitute reversible error because the same or similar evidence was admitted without objection at another point in the trial. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991).

Appellant notes that Onyinanya's testimony did not relate to "the actual allegations of the indictment, which alleged penetration of A.T.'s anus." To the extent appellant is attempting to raise a relevancy complaint, he made no objections regarding the relevancy of the evidence at trial. Accordingly, he has not preserved this issue for review. *See Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). We resolve appellant's first issue against him.

## B. Sufficiency of the Evidence

In his second issue, appellant challenges the sufficiency of the evidence to support his conviction. When an appellant challenges the sufficiency of the evidence to support a conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State,* 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id.* If the evidence is conflicting, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination." *Id.* We defer to the trier of fact's determinations of

witness credibility and the weight to be given their testimony. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

Appellant argues the evidence is insufficient because A.T. recanted her accusations and the evidence presented at trial that he committed sexual assault as alleged in the indictment was "scant." We disagree. Although A.T. recanted her accusation, the jury was free to disbelieve the recantation. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). A.T. recanted her accusations only after she was removed from the foster family to whom she made her initial outcry and had lived with appellant's brother and his wife for several months. The evidence showed that A.T. cared about her father and was afraid he would go to jail based on what she said. Liticker, A.T.'s therapist, stated it was not unusual for children to recant statements when they realize the consequences of what they have said.

Before she lived with the Tanners, A.T.'s statements to others about appellant's acts of abuse and the terms she used were consistent. A child victim's outcry statement alone can be sufficient to sustain a conviction for aggravated sexual assault. *See Kimberlin v. State*, 877 S.W.2d 828, 831 (Tex. App.—Fort Worth 1994, pet. ref'd). There is no requirement that the outcry testimony be corroborated or substantiated by the victim or independent evidence. *Id*. at 832. Even though corroboration is not required, A.T.'s allegation that appellant put his finger in her anus was confirmed by appellant, as was her statement his friend took naked pictures of her.

Appellant suggests that some of the acts A.T. told others he committed were "factually impossible" and "cast doubt" on other things she said. Appellant is essentially challenging A.T.'s credibility. This Court may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the jury in this case. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). After reviewing the evidence under the

applicable standard of review, we conclude the evidence is sufficient to sustain appellant's

conviction. We resolve appellant's second issue against him.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.


/David Evans/

DAVID EVANS

Do Not Publish                                    JUSTICE

TEX. R. APP. P. 47.1

150787F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROY LEE TANNER, Appellant

No. 05-15-00787-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1476344-Q.
Opinion delivered by Justice Evans. Justices Bridges and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 20th day of June, 2016.